Sherry HICKS, Plaintiff,

v.

BIG BROTHERS/BIG SISTERS
OF AMERICA, Defendant.

Civil Action No. 96–CV–2352.

United States District Court,
E.D. Pennsylvania.

Oct. 29, 1996.

Jeffrey L. Pettit, Phelan, Pettit & Biedrzycki, Philadelphia, PA, for Plaintiff.

Glenn C. Equi, Stephen M. Rae, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Before the Court is Plaintiff's Motion for Reconsideration of our August 26, 1996 Order granting summary judgment on Count II of her complaint. We deny this motion because we adhere to our initial determination that Plaintiff failed to file a timely complaint with the Equal Employment Opportunity Commission. *See United Air Lines v. Ev-*

*ans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380 (3d Cir.1994); *cf. Colgan v. Fisher Scientific Co.,* 935 F.2d 1407 (3d Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991). We address the merits of the new "continuing violation" argument that Plaintiff raises in the instant motion, however, to explain why it does not change our analysis.[1] We continue to assume without deciding that Plaintiff's May 8, 1995 "attempt" to file her charge is the point from which the timeliness of her complaint should be measured.

■ As a prerequisite to filing a Title VII suit, the aggrieved party must file a charge of employment discrimination within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). The statute therefore requires courts to "identify precisely the 'unlawful employment practice' of which [plaintiff] complains." *Ricks,* 449 U.S. at 257, 101 S.Ct. at 503.[2] As our Court of Appeals recently noted, however, this determination is not always easily made. *See West v. Philadelphia Electric Co.,* 45 F.3d 744, 754 (3d Cir.1995) ("courts have grappled with cases presenting questions of precisely when a 'practice' occurred"). The uncertainty that can arise in cases where a plaintiff "does not know he has been harmed" or where a defendant has engaged in an "ongoing, continuous violation" has led the Supreme Court to recognize "that the filing of a timely charge is 'a requirement

---

1. Plaintiff makes this motion pursuant to Federal Rule of Civil Procedure 59(e). Such a motion must rely on one of three major grounds: (1) an intervening change of controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995) (citations omitted). Plaintiff presumably relies on the third ground in this case because the new evidence she presents here was not heretofore unavailable.

2. Thus, in our August 26 Order, we identified Plaintiff's termination as the precise employment practice of which she complained. Following *Ricks* and *Oshiver,* we noted that "[w]here, as here, a plaintiff charges that the defendant's termination of her employment was the result of unlawful discrimination, the 'alleged unlawful employment practice' occurs at the time the defendant makes the decision to terminate and communicates that decision to the aggrieved party." Her May 8, 1995 "attempt" to file was therefore untimely because it came more than 300 days after July 7, 1994, when she was notified of her termination. As we noted before, it was on this precise basis that the EEOC informed Plaintiff that it lacked jurisdiction over her complaint.

that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling.' " *Id.* (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982)). The "continuous violation" doctrine is one such exception, and is "premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1415 n. 6 (10th Cir.1993); *see also Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1167 (7th Cir.1996) (collecting cases affirming this principle); *Alldread v. City of Grenada,* 988 F.2d 1425, 1432 (5th Cir.1993).

▮ In this Circuit, a plaintiff must establish two things to come within the continuing violation theory:

> First, he must demonstrate that at least one act occurred within the filing period: 'the crucial question is whether any present violation exists.' Next, the plaintiff must establish that the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.' The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.

*West,* 45 F.3d at 754–55 (internal citations omitted). "Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory, ... the 300-day filing period becomes irrelevant—as long as one violation has occurred within that 300 days." *Id.* at 755.

Turning now to the present case, Plaintiff argues that the evidence demonstrates a "series of discriminatory acts which established a continuing pattern of discrimination." First, she alleges that Defendant's National Executive Director made discriminatory comments and gave preferential treatment to a white, male co-worker during her employment and right through the eventual reorganization of her job function and reassignment of her duties to a white employee (which occurred three months after her termination). Second, Defendant failed to give Plaintiff a period of three months after she

had been terminated to complete her assignments and secure another position, a period that had allegedly been granted to another white employee who had been asked to resign. Finally, Plaintiff alleges that she suffered disparate treatment up until the last day of her employment in that her white, male peer was paid more than she was. As Plaintiff argues, "each day that the plaintiff received less pay ... also constituted disparate treatment." We now apply these facts to the *West* two-part test described above.

▮ We find that Plaintiff has satisfied part one by presenting evidence of at least one present violation. It is well-settled that "[i]t is not sufficient that acts outside the required time limit had a continuing *effect* within the statutory time allowed for suit." *Martin,* 3 F.3d at 1415 (emphasis in original); *see also Ricks,* 449 U.S. at 257, 101 S.Ct. at 503–04; *Clark v. Commonwealth of Pennsylvania,* 885 F.Supp. 694, 706 (E.D.Pa.1995). Rather, the Plaintiff must demonstrate an independent discriminatory act within the filing period, in this case, the 300 days before May 8, 1995. By drawing every inference in Plaintiff's favor, as we are required to do here, we find that the alleged reorganization of Plaintiff's position into two was such an act. It was not the "delayed, but inevitable, consequence" of earlier decisions, *see Bronze Shields v. N.J. Dept. of Civil Serv.,* 667 F.2d 1074, 1083 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982); *E.E.O.C. v. Westinghouse,* 725 F.2d 211, 219 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984), but was, rather, a separate decision made within 300 days of May 8, 1995 that was, allegedly, part of the pattern of discrimination suffered by Plaintiff. Because Plaintiff need only establish one present violation to satisfy the first prong of the test, we move on to part two.

▮ It is the second *West* prong that is fatal to Plaintiff's argument. Part two of the *West* test requires us to analyze whether Plaintiff has demonstrated "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Jewett v. International Telephone and Telegraph Corp.,* 653

F.2d 89, 91 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). In deciding whether a series of acts constitute "a persistent, on-going pattern," the Third Circuit recommends the approach of other Court of Appeals whereby the following non-exhaustive list of factors are considered:

(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*West*, 45 F.3d at 755 n. 9 (citing *Martin*, 3 F.3d at 1415); *see also Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983); *Waltman v. International Paper Co.*, 875 F.2d 468, 474–75 (5th Cir.1989). The first two factors do not shed much light in this case. Whether the violations alleged here constitute "the same type of discrimination" depends on the degree of generality one uses. At a high level, of course, each of the acts can be considered part of the pattern of racial and gender discrimination that Plaintiff suffered. In a more specific sense, however, Defendant's alleged reorganization of duties among its employees is a very different sort of act than making disparaging remarks or refusing to grant Plaintiff a three-month grace period to find new employment. *Cf. Clark*, 885 F.Supp. at 706–07 (holding that two denials of promotions in 1985 and 1987 to same individual under Civil Service Exam method were "separate and distinct instances of promotions and cannot be grouped together as a continuous violation"). With respect to the frequency of the alleged violations, they might fairly be characterized as occasional, i.e. not infrequent, but not "consistently" and "without respite" as in *West*, 45 F.3d at 755–56.

■ The "permanence" element, however, weighs very heavily against finding a continuing violation in this case. As the Tenth Circuit has explained, the "permanence" factor

limits the reach of the continuing violation theory by restricting its operation to those situations underscored by its equitable foundation. That is, if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge with the EEOC with respect to that event or series of events.

*Martin*, 3 F.3d at 1415 n. 6; *see also Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 223–25 (6th Cir.1991). Viewing the evidence in the light most favorable to Plaintiff, she endured discriminatory comments, received less pay than her white, male co-worker did for equal work, and, most importantly, was wrongfully terminated, all by July 7, 1994. A reasonable person would clearly have been alerted to act to assert her rights under these circumstances by this date. Indeed, the Third Circuit found a continuing violation in *West* precisely because, in part, the harassment at issue there "did not cause a discrete event *such as a lost job* or a denied promotion and, thus, it did not trigger a duty of the plaintiff to assert his rights arising from that deprivation." 45 F.3d at 756 (emphasis added). Thus, allowing Plaintiff in this case to avoid the statutory timely filing requirement by invoking the continuing violation doctrine would be inconsistent with the doctrine's equitable premise "that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin*, 3 F.3d at 1415 n. 6.

## CONCLUSION

In short, this is not a case where it is difficult to identify the employment practice of which Plaintiff complains. Both parties agree that she was terminated on a particular date, and that her first attempt to file charges came more than 300 days after this date. Congress legislated the 300 day statute of limitations for the valid purpose of preventing litigation of stale claims. We act consistently with that purpose by granting summary judgment on Count II. An appropriate Order follows.

## ORDER

AND NOW, this 29th day of October, 1996, upon consideration of Plaintiff's Motion for Reconsideration of our August 26, 1996 Order Granting Summary Judgment on Count II, and Defendant's response thereto, it is hereby ORDERED that Plaintiff's Motion is DENIED.