**Marlene HARRIS, Plaintiff,**

v.

**SMITHKLINE BEECHAM, Defendant.**

**Civil Action No. 96–4764.**

United States District Court,
E.D. Pennsylvania.

Dec. 8, 1998.

Marshall L. Williams, Philadelphia, PA, for Plaintiff.

Paul D. Snitzer, Philadelphia, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Before the Court is the motion of defendant SmithKline Beecham ("SmithKline") for summary judgment on all of the claims of plaintiff Marlene Harris ("Harris"). Because I conclude that Harris has not sustained her burden to establish a genuine issue of material fact on any of her claims and that her claims for retaliation and discrimination on the basis of sex, age, and disability were not included in her charge with the Equal Employment Opportunity Commission ("EEOC"), the motion will be granted.

## I. Background

The following facts are gleaned from the record and taken in the light most favorable to Harris, the nonmoving party. Immaterial

facts and factual averments not properly supported by the record are omitted.

Harris, a black female, was hired in February 1983 by SmithKline as a clerk/typist. She was promoted during her tenure at SmithKline, ultimately to the position of senior administrative secretary, class 9.

Harris alleges that she asked to attend a legal secretaries conference held in April of 1989, but was not permitted to attend by her supervisor at the time, Janice Williams. (Harris dep. at 12–13). Harris alleges that although the reason she was told she was not allowed to attend the conference was that she had not been in the department for at least one year, there were two other people who had not been in the department for one year who were allowed to attend the conference. (Harris dep. at 21). Harris presented no evidence of the gender or race of those two individuals. In November of 1993, Harris applied to Stephen Venetianer, her supervisor at the time, to attend the same conference and was permitted to attend. (Harris dep. at 28).

Harris claims that in 1990 she reported racial discrimination to the human relations representative for her department at Smith-Kline, Janis McKee Pastor. (Declaration of Harris ¶ 3). Although it is not clear from the record, it appears that the basis of Harris' charge of racial discrimination was that she perceived that she was about to be demoted based on her race. One of the attorneys that Harris worked for switched to part-time hours which reduced the attorney's job classification; under a policy of SmithKline, Harris' classification would also have been lowered in accordance with her supervisor. Harris told Pastor that this policy had not been applied to two other white secretaries, Diane Halata and Trudy Halpher. (Declaration of Harris ¶ 4). After expressing her concerns to Pastor, despite having received a demotion letter,[1] Harris was not demoted to a lower secretary designation. (Declaration of Harris ¶ 4).

Harris claims that SmithKline began retaliating against her in May 1990 and continued to do so until her termination. The retaliation, Harris alleges, was based on her voicing concern over her potential demotion in 1990. Harris claims that she was not allowed to attend a training session in April of 1991, while two other white female secretaries were allowed to go to the training.

In 1991, Harris claims that she was denied software updating that two white female secretaries were provided. From March to August 1992, she was denied training and was assigned to a paralegal, while no other white secretary has been assigned to a paralegal. (Declaration of Harris ¶ 11). In May 1992, Harris was assigned a complex computer project that required a higher version of software than she had on her computer because she had been denied the needed updated software. In January 1993, Harris claims she was transferred to another position and replaced by a white secretary who received the training that Harris was denied earlier.

Harris claims that her work load increased in July of 1990 until 1993 such that she had to work for more attorneys than other white secretaries. (Declaration of Harris ¶ 11). Specifically, from June until July 14, 1993, Harris was assigned to a third attorney, while white secretaries only worked for two attorneys. On August 20, 1993, Harris was assigned to a fourth attorney.

Harris claims she was regularly reprimanded for her work performances in the first two weeks of August, 1993, even though she was working for four attorneys while white secretaries worked for two attorneys; however, Harris specifically refers to only one instance in which her supervisors discussed her work performance with her.

At some point in 1993, Harris worked only for Stephen Venetianer and Nora Stein Fernandez, two attorneys at SmithKline. In July of 1993, Harris asserts that Venetianer and Fernandez never expressed any concern about her performance or ability. However, in November of 1993,[2] they informed Harris

---

1. The demotion letter that Harris asserts she received was not produced by either party as part of the record.

2. Harris testifies in her declaration that she was "counseled in November 1994 for not doing my job" and that she "had no history of discipline, but for the one counseling in November of

in a meeting that they did not think she was keeping up with her work. Harris countered that there was no work in her box that needed her attention. Harris contends that Venetianer stated that there were other problems that he could put in writing for Harris, but Harris never· received anything in writing. (Declaration of Harris ¶ 5). Harris did not allege or produce evidence that she was reprimanded in any way as a result of this meeting, or that a record of this meeting was made to her file. Indeed, Harris admits that she received a positive annual evaluation from Venetianer and Fernandez at the end of 1993.

Harris alleges in the complaint that in December of 1993 one of her supervisors, apparently Venetianer, asked her if she was happy that there were more black people in the department. (Complaint ¶ 18). Harris produced no other evidence to support this allegation, nor does she include it in her supporting declaration.

Harris claims that she sought to be transferred to open positions in other departments where she was qualified to work, but that she was not transferred. (Declaration of Harris ¶ 7). Harris does not indicate which positions were open, when they were open, or whether they were filled with white secretaries.

Harris alleges that while she worked at SmithKline, she observed other blacks being treated like she was treated, while whites were not subjected to the same treatment. (Declaration of Harris ¶ 10). To support this allegation, Harris points to the declaration testimony of Tia Conquest, Cynthia Wright, and Denise Murphy, all black female former employees of SmithKline. Conquest testified that she was hired as a file clerk at Smith-Kline in March of 1989, but was promoted to a secretary during her employment. Conquest states that because she did not receive training to do the job, she was fired for being unable to carry out her job in April 30, 1992. (Declaration of Conquest ¶¶ 2–3). Wright testified that she was a drug information

specialist/ medical writer for SmithKline for thirteen years ending in May of 1995. (Declaration of Wright ¶ 2). Wright asserts that she sought promotions within SmithKline but was told she was not qualified. Wright testified that she requested training after she was transferred to handle a product, but that she was denied training. (Declaration of Wright ¶ 3). Wright testified that she observed SmithKline assign whites to positions and provide them with education to perform their positions. (Declaration of Wright ¶ 4). She also testified that she was required to handle her workload and the workload of other temporary employees, while whites were not required to carry such a workload. (Declaration of Wright ¶ 5). Wright did not provide the relevant dates or any other specifics to support these allegations, such as identifying individuals, available positions, or particular training sessions. Murphy testified that while working at SmithKline for over sixteen years, beginning in October of 1975 and ceasing in March of 1992, she observed that she and other black employees were not provided the opportunity to advance and that whites with less experience than black employees were promoted and given other opportunities not afforded to black employees. (Declaration of Murphy ¶ 3).

Harris argues that her annual evaluations from SmithKline were always positive. (Declaration of Harris ¶ 12). The evaluations of Harris attached to her declaration from June 26, 1993 (Evaluation 8), June 1992 (Evaluation 7), February 1991 (Evaluation 6), February 1990 (Evaluation 5), March 1989 (Evaluation 4), January 1988 (Evaluation 3), March 1987 (Evaluation 2), and May 1985 (Evaluation 1) reveal that Harris mostly received feedback from her supervisors that she was performing at or above expectations.

On January 31, 1994, Harris spoke to Janice Robinson, a representative of SmithKline who dealt with complaints about discrimination, about stress Harris was experiencing. Robinson suggested that Harris take a few days off, which she did. Harris contends

1994." (Declaration of Harris ¶¶ 11 and 12). There is no additional evidence of a counseling session in 1994, and it appears that Harris is referring to the meeting with Venetianer and

Fernandez in November of 1993 that she discusses earlier in her declaration. (Declaration of Harris ¶ 5). Indeed, Harris was terminated in August of 1994.

that she suffered a "mental stress injury" on February 4, 1994, for which she began taking blood pressure medication as prescribed by her doctor. (Complaint ¶¶ 28–29). She claims that the stress occurred when she entered the her place of employment and that it has caused her to lose sleep and have nose bleeds. Harris claims that her disability caused by her job prevented her from sleeping and eating normally. In addition, Harris claims that her disability affected her ability to maintain a social life, including completing household chores or engaging in sexual relations with her husband.

Harris went on short term disability leave from SmithKline in February of 1994. In a letter dated June 9, 1994 (Def.'s Ex. 6), SmithKline informed Harris that if she did not return to work when her short term disability benefits expired in August of 1994, she would be eligible to apply for long term disability benefits and her employment would be terminated, pursuant to the company's disability policy. (Def.'s Ex. 11). When Harris' short term disability benefits ran out in August of 1994, she did not return to work and applied for long term disability benefits. SmithKline terminated her in August of 1994. At the time of her termination, Harris was over 40 years old and was a senior administrator secretary, class 9. (Declaration of Harris ¶ 13; Complaint ¶ 11). Harris asserts that her position was filled by a white female "around but not older than 35 years old." (Declaration of Harris ¶ 13).

Harris filed a charge against SmithKline for race discrimination with the EEOC, which was stamped as received on June 17, 1994. (Def.'s Ex. 8). Harris added an addendum to her charge with the EEOC on April 6, 1995, alleging that her termination was due to discrimination (Def.'s Ex. 8 at EE000139). On August 10, 1995, Harris amended her charge to allege that she was subjected to racial comments from Venetianer, that Fernandez unfairly criticized her work, that her work assignment was heavier than other whites, and that her performance had been criticized by Venetianer and Fernandez in the November 1993 meeting, all constituting harassment and discrimination on the basis of race (Def.'s Ex. 8· at EE000082). The EEOC mailed a notice of right to sue to Harris on April 3, 1996. (Def.'s Ex. 8 at EE000004). In a letter dated June 5, 1996 to SmithKline, counsel for Harris purported to amend her EEOC charge to include claims for retaliation and age and disability discrimination. (Def.'s Ex. 9). Counsel for plaintiff wrote that "[t]he previous basis for the charge of discrimination on both charges was race only." (Def.'s Ex. 9).

Harris filed a complaint in the Court on July 2, 1996. In her complaint, she alleges claims for wrongful discharge in Count I, age discrimination in Count II, violation of 42 U.S.C. § 1981 in Count III, breach of contract in Count IV, retaliation in Count V, employment discrimination under 42 U.S.C. § 2000e–2 in Count VI, violation of the Pennsylvania Human Relations Act in Count VII, and violation of the Americans with Disabilities Act in Count VIII.

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" then a motion for summary judgment may be granted.

The moving party has the initial burden of illustrating for the court the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case;" the movant is not required to produce affidavits or other evidence to establish that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. 2548.

Once the moving party has made a proper motion for summary judgment, the burden switches to the nonmoving party. Under Rule 56(e),

> [w]hen a motion for summary judgment is made and supported as· provided in this

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The court is to take all of the evidence of the nonmoving party as true and to draw all reasonable inferences in his favor in determining if there is a genuine issue of material fact. *See Adickes,* 398 U.S. at 158–59, 90 S.Ct. 1598. In order to establish that an issue is genuine, the nonmoving party must proffer evidence such that a reasonable jury could return a verdict in her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. *See id.* at 249–50, 106 S.Ct. 2505.

## III. Analysis

### A. Race Discrimination Claims

Harris alleges claims for disparate treatment race discrimination and racially hostile work environment under Title VII, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"). Courts have uniformly interpreted the PHRA consistent with Title VII. *See Clark v. Commonwealth of Pennsylvania,* 885 F.Supp. 694, 714 (E.D.Pa.1995); *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1257 (M.D.Pa.1994). Similarly, courts have held that the legal standard for a § 1981 case is identical to the standard in a Title VII case. *See, e.g., Mason v. Association for Independent Growth,* 817 F.Supp. 550 (E.D.Pa.1993) (citing *Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3d Cir.1983)). Thus, I will analyze Harris' claims only under Title VII; however, my analysis and conclusions are equally applicable to the claims of Harris under Title VII, § 1981, and the PHRA.

### 1. Timeliness of Harris' Allegations and Availability of Continuing Violation Theory of Discrimination

Many of the acts of discrimination which Harris alleges occurred more than 300 days before the filing of her charge with the EEOC on June 17, 1994. In deferral states such as Pennsylvania, a charge under Title VII must be filed with the EEOC within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e–5(e). Thus, alleged acts which occurred before August 22, 1993 are untimely and may not be included in Harris' Title VII claims.

In actions under § 1981, a court must ascertain the analogous underlying cause of action under state law and apply the applicable statute of limitations. *See Goodman v. Lukens Steel Company,* 777 F.2d 113, 117–21 (3d Cir.1985), *aff'd,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Drum v. Nasuti,* 648 F.Supp. 888, 902 (E.D.Pa.1986) (citing *Jennings v. Shuman,* 567 F.2d 1213, 1216 (3d Cir.1977), *aff'd,* 831 F.2d 286 (3d Cir.1987)). The appropriate statute of limitations is the state statute for personal injury actions, which in Pennsylvania is a two year statute of limitations under 42 Pa.C.S. § 5524. *See Drum,* 648 F.Supp. at 902–03. While state law determines the length of the limitations period, federal law determines the date of accrual, or the date on which the statute begins to run. *See id.* at 903 (citing *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 197 n. 16 (3d Cir.1984)). Thus, any alleged acts which occurred prior to July 2, 1994, two years before she filed her complaint in this Court on July 2, 1996, are untimely and may not be included in Harris' § 1981 claim.

Harris argues that all of her allegations constitute a "continuing violation" which ended when she was terminated so she should be allowed to include all of these acts in her claim for discrimination. Harris contends that "where there is an allegation the discriminatory act is continuing there need be no allegation [or] other discriminatory conduct [sic] occurred within 300 days of the time of the agency filing. All that is necessary is that the conduct was continuing." (Pl.'s Brief at 13).

■ In *Rush v. Scott Specialty Gases, Inc.*, the Court of Appeals for the Third Circuit laid out the requirements for a plaintiff to show a continuing violation: (1) she must allege at least one act of discrimination that occurred within the 300 days, and (2) she must show a continuing pattern of discrimination, more than just isolated or sporadic acts of intentional discrimination. 113 F.3d 476, 481 (3d Cir.1997) (citing *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754–755 (3d Cir.1995)). A court should consider the subject matter, frequency, and permanence of the discrimination in discerning if there was a continuing pattern of discrimination, with permanence being the most important factor. *Id.* at 482 (citing *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971 (5th Cir.1983)). The factor of permanence indicates " 'whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.' " *Hicks v. Big Brothers/Big Sisters of America*, 944 F.Supp. 405, 408 (E.D.Pa.1996) (quoting *West*, 45 F.3d at 755 n. 9).

■ In the context of a claim for hostile work environment sexual harassment, a plaintiff may include events that occurred outside the limitations period in her claim if it "would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct" or if the earlier conduct would only have been actionable in light of events that occurred later within the limitations period. *Rush*, 113 F.3d at 482. However, a plaintiff must sue as soon as the harassment "becomes sufficiently palpable that a reasonable person would realize she had a substantial claim under Title VII." *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1166 (7th Cir.1996); *see also Hicks*, 944 F.Supp. at 408; *Seals v. Oil Data, Inc.*, 107 F.3d 21 (10th Cir.1997) (noting that the plaintiff should have been aware that she could have asserted her rights earlier because the earlier alleged incidents were more serious in nature than the later incidents); *Dupont–Lauren v. Schneider (USA), Inc.*, 994 F.Supp. 802, 816 (S.D.Tex.1998) ("If a plaintiff knows or with the exercise of reasonable diligence would have known that she suffered from discrimination, she 'may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.' ") (quoting *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279, 282 (7th Cir.1993)).

■ I conclude that Harris should have been aware that she could have asserted her rights in 1990 when she received the demotion letter from SmithKline which she believed was based on race discrimination. Indeed, she asserted her rights to SmithKline at the time, but she did not file a charge with the EEOC until four years later. The other sporadic allegations of Harris between 1990 and 1994 do not demonstrate a continuing pattern of discrimination. Thus, Harris has not established that she may proceed under a continuing violation theory, and the untimely allegations of Harris will not be considered by the Court in assessing her claims. In determining the viability of Harris' claims for race discrimination, I will only consider events after August 22, 1993 for her Title VII claim and after July 2, 1994 for her § 1981 claim.

## 2. Racially Hostile Work Environment

■ In *Meritor Savings Bank v. Vinson*, the Supreme Court observed that to state a claim for hostile environment, the harassment must be pervasive or severe enough " 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). In making this determination, the totality of the circumstances must be considered, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance. *Id.* These factors are to be viewed objectively and subjectively, such that "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abu-

sive—is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

■ A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support her claim of hostile work environment harassment. *See Andrews,* 895 F.2d at 1482; *Harris,* 510 U.S. at 20, 114 S.Ct. 367. While it is possible for a single action to constitute a claim for hostile work environment harassment if the act is "of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work," generally a plaintiff must show that she was subjected to "repeated, if not persistent acts of harassment." *Bedford v. Southeastern Pennsylvania Transportation Authority,* 867 F.Supp. 288, 297 (E.D.Pa.1994).

■ Even if all of Harris' allegations dating back to 1983 were considered, Harris has not presented evidence sufficient to establish that the acts were so severe or pervasive as to constitute a racially hostile work environment. Harris produced no evidence that the actions of SmithKline were physically threatening or interfered with her ability to do her job. Venetianer's racial comment to Harris was isolated and not severe. Further, the acts that Harris alleges were sporadic and infrequent such that they cannot be said to characterize the environment in which Harris worked. Thus, summary judgment will be granted on Harris' claim of hostile environment.

### 3. Disparate Treatment

SmithKline argues that Harris has not produced evidence to support a prima facie claim of disparate treatment race discrimination. To establish a claim for disparate treatment under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged from or denied the position, or suffered adverse employment consequences; and (4) that non-members of the protected class were treated more favorably. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997).

To support a finding that other employees were treated more favorably, a plaintiff must present evidence such that a jury could reasonably infer that her discharge, or adverse employment action, was the result of discrimination. *See Phillips v. Dalton,* 1997 WL 24846, *3 (E.D.Pa.)(noting that "plaintiff must show that [s]he was terminated 'under circumstances which give rise to an inference of unlawful discrimination' ")(quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), *aff'd,* 151 F.3d 1026 (3d Cir.1998).

■ First, I will consider Harris' claim that her termination was the result of racial discrimination. The only evidence Harris produced to show that her termination arose under circumstances that give rise to an inference of discrimination was the fact that she was working for four attorneys while other white secretaries worked for two attorneys, that her performance was questioned by her supervisors in November of 1993, and that Venetianer asked her if she were happy that there were more blacks in the department in December of 1993. Even assuming that evidence is sufficient to establish a prima facie case of race discrimination based on her termination, Harris has presented no evidence that the reason proffered by SmithKline for her termination, that she did not return to work after her short term disability benefits ran out, was pretextual. The impetus for Harris' termination was the fact that she did not return to work after her short term disability benefits expired. *See Keller v. Orix Credit Alliance,* 130 F.3d 1101, 1108–09 (3d Cir.1997) (en banc) (noting that for a plaintiff to show pretext to survive a motion for summary judgment, the plaintiff must produce evidence "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason"); *Mallon v. Prudential Property & Casualty Insurance Co.,* 688 F.Supp. 997, 1001, 1006 (D.N.J.1988) (granting summary judgment to defendant who terminated plaintiff after short term disability benefits ran out because employee's basis for pretext was "simple accusations and mere speculation"). I conclude

that a reasonable jury could not infer that the reason given by the defendant for plaintiff's termination was pretextual.

▮ Second, I will consider Harris' claim that she was discriminated against before her termination. The timely allegations to be considered by the Court are that Harris had to work for four attorneys, that her performance was questioned in a November 1993 meeting, and that she was subjected to a racial comments by her supervisor. Aside from her termination, none of the acts that Harris timely alleges constitute an adverse employment action. The Court of Appeals for the Third Circuit has held that

> [r]etaliatory conduct other than discharge or refusal to rehire is thus proscribed by Title VII only if it alters the employee's "compensation, terms, conditions, or privileges of employment," deprives him or her of "employment opportunities," or "adversely affect[s] his [or her] status as an employee." It follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "[o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."

*Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300–1301 (3d Cir.1997) (quoting *Smart v. Ball State University,* 89 F.3d 437, 441 (7th Cir.1996) (internal quote omitted) and holding that unsubstantiated oral reprimands and unnecessary derogatory comments did not rise to the level of an adverse employment action); *see also Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994) (holding that a transfer of an employee to a more stressful job was not an adverse employment action). Harris produced no evidence that her salary or benefits were effected or that she was foreclosed from employment opportunities by any of the alleged acts of SmithKline. Thus, Harris did not produce evidence to survive summary judgment on her claims of race discrimination under Title VII, § 1981, or the PHRA, and summary judgment will be granted to SmithKline on those claims.

## B. Retaliation and Sex, Age, and Disability Discrimination Claims

SmithKline argues that Harris' claims for retaliation, sex, age, and disability discrimination are barred because they were not part of Harris' charge with the EEOC. Alternatively, SmithKline argues that Harris has not produced evidence sufficient to sustain these claims.

▮ A thorough review of Harris' EEOC file reveals that the only claims asserted by Harris in her charges with the EEOC were for race discrimination. (Def.'s Ex. 8). On her charge forms, Harris only checked the box designated "race," and she did not check the boxes for "sex," "age," or "retaliation." (Def.'s Ex. 9 at EE000015; EE000081; EE000138). Counsel for Harris wrote a letter dated June 5, 1996 purporting to amend her EEOC charge to include claims for retaliation, age and disability discrimination, but this letter was filed after the EEOC investigation was concluded and the notice of right to sue had been sent to Harris. (Def.'s Ex. 9). Thus, Harris did not exhaust her administrative remedies on her claims of retaliation or sex, age, or disability discrimination, and SmithKline will be granted summary judgment on these claims. *See Antol v. Perry,* 82 F.3d 1291 (3d Cir.1996) (affirming a grant of summary judgment to the defendant because the plaintiff's charge did not fairly encompass his claim of gender discrimination); *see also Watson v. SEPTA,* 1997 WL 560181, at *6–7 (E.D.Pa. Aug.28, 1997) (dismissing retaliation claim where plaintiff's charge alleged only sex and disability discrimination).

Even assuming that Harris' EEOC charge could be read to include claims for retaliation or discrimination based on age, disability, or sex, as illustrated below, Harris did not produce sufficient evidence from which a reasonable jury could find in her favor on those claims.

### 1. Retaliation

▮ Title VII prohibits employers from retaliating against employees who have "opposed any practice made unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified,

assisted, or participated in any manner in an investigation, proceedings or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). Under the applicable *McDonnell Douglas* model, to establish a prima facie case of retaliation, an employee must show (1) she engaged in activity protected under Title VII, (2) that the employer took an adverse employment action against her, and (3) a causal connection between her protected activity and the adverse employment action. *See Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir.1995). Once the plaintiff has met this burden, the defendant has the burden to produce a legitimate, nondiscriminatory reason for the employment action. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir.), *cert. denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991). Then the plaintiff must demonstrate that the defendant's reason is a pretext for retaliation. *See Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 73 (3d Cir.1986).

The Court of Appeals for the Third Circuit has held that informal protests of discrimination, such as complaints to management, rise to the level of protected activity. *See Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir.1995) (citing *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir.1990)). It is clear that Harris engaged in protected activity when she lodged a complaint with the human resources department about her potential demotion in 1990. Harris argues that she suffered demotion and unfair discipline in retaliation for her protected activity; however, Harris produced no evidence to support this position. Indeed, as discussed above in section III.A.2, the only adverse action Harris suffered was her subsequent termination in 1994.

■ The third element Harris must show is that a causal connection exists between her protected activity in 1990 and her termination in August of 1994. A causal connection between an employee's protected activity and an adverse action by her employer may be inferred if the events occurred close in temporal proximity to each other. *See Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir.1997) (holding that there are no specific time parameters to raise an inference of causation and that "[w]hen

there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation"); *Jalil v. Avdel Corporation*, 873 F.2d 701, 708 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

■ I conclude that Harris has produced no evidence to establish a causal connection between her termination and her protected activity. Four years elapsed between the time that she lodged her complaint and the time she was terminated, and that span of time in the absence of any other evidence of a causal connection, is not sufficient to sustain Harris' burden. In addition, Harris did not allege nor did she produce evidence that the people who took the alleged retaliatory actions against Harris even knew about the complaint she lodged to Pastor in the human services department in 1990.

Harris also argues that her termination was in retaliation for her filing a charge with the EEOC shortly before her termination. However, the charge was filed on June 17, 1994 which was after Harris received the letter from SmithKline indicating that she would be terminated. Thus, the timing of these events does not support a finding of a causal connection between the two and is insufficient to support a claim for retaliation. Finally, assuming that Harris were able to establish a prima facie case of retaliation, she has produced no evidence from which a reasonable jury could find that SmithKline's reason for her termination was pretextual. *See*, supra, section III.A.2.

### 2. Age

■ Under the ADEA, a plaintiff can sustain an age discrimination claim by either presenting direct or circumstantial evidence. A direct evidence case of age discrimination exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994). In the instant case, Harris has produced no direct evidence of age discrimination.

■ Where there is no direct evidence of age discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting analysis of *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under a *McDonnell Douglas* framework, a plaintiff must first present a prima facie case by establishing, by a preponderance of the evidence, that (1) she is over 40 years old, (2) she is qualified for the position in question, (3) she suffered from an adverse employment decision, and (4) her replacement was sufficiently younger to permit an inference of age discrimination. *See Lawrence v. National Westminster Bank N.J.*, 98 F.3d 61, 65–66 (3d Cir.1996) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995)).

■ Harris contends that she was 43 years-old when she was terminated and that she was replaced by a white female who was "no more than 35 years-old." Harris did not produce any evidence that affirmatively established the age or identity of the woman who replaced her after her termination. Again, assuming that the difference between the ages of Harris and her replacement is sufficient to permit an inference of age discrimination, Harris did not sustain her burden to show that SmithKline's legitimate business reason for firing her, that she did not return after her short term disability benefits ran out, was a pretext for age discrimination. *See supra*, section III.A.2. Thus, summary judgment will be granted to SmithKline on the claim of Harris for age discrimination in Count II of the complaint.

### 3. Disability

■ To make out a prima facie case under the ADA, the plaintiff must prove that (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the job she held or sought; and (3) she was terminated or discriminated against because of her disability. *See McCoy v. Pennsylvania Power and Light Co.*, 933 F.Supp. 438, 440 (M.D.Pa.1996) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995)).

Harris argues that SmithKline had knowledge of her disability because it received medical information from her doctor while it provided her with short term disability benefits. (Declaration of Harris ¶ 8). Harris argues in support of her claim under the ADA that SmithKline fired Harris on the same day it placed her on long term disability. *Olson v. General Electric Astrospace*, 966 F.Supp. 312 (D.N.J.1977) Harris contends that a jury could infer from the timing of these events that the termination was based on her disability. Harris apparently is claiming that because the actions of SmithKline caused her to be disabled, and she was terminated because of her inability to return to work, that action constitutes disability discrimination.

■ Harris did not allege nor produce evidence, as she must under the law, that she could have continued to work at her job at SmithKline; indeed, the record reveals that she did not return to her job and filed for long term disability benefits after her short term disability benefits ran out. In addition, Harris produced no evidence to support her claim that her termination was the result of discrimination based on her disability. Harris' allegation that she suffered emotional injury as a result of the alleged discrimination by SmithKline, in effect, a claim that SmithKline caused her disability, is not sufficient to support her claim that SmithKline fired Harris because of this disability.

Therefore, I conclude that Harris has not submitted any evidence that creates a genuine issue of material fact that she is a qualified individual who can perform the job she held with or without reasonable accommodation or that her termination was based on her disability. Accordingly, I will enter summary judgment in favor of SmithKline on the ADA claim in Count VIII.

### 4. Sex

Although alleging sex discrimination in her complaint, Harris does not pursue this claim in her defense to the motion for summary judgment. It is clear from the record that Harris has no evidence that she was terminated or faced adverse employment actions because of her gender; accordingly, sum-

mary judgment will be granted to Smith-Kline on this claim in Count VI and VII of the complaint.

## IV. Conclusion

Based on the foregoing analysis, the motion of SmithKline will be granted on all of the claims asserted by Harris.[3]

An appropriate Order follows.

### *ORDER*

**AND NOW**, this 8th day of December, 1998, upon consideration of the motion of defendant SmithKline Beecham for summary judgment (Document No. 37), the response of plaintiff Marlene Harris (Document No. 42), the reply of the defendant (Document No. 44), as well as the pleadings, depositions, declarations, exhibits and other evidence of record, having found that there is no genuine issue of material fact and having concluded the defendant is entitled to judgment in its favor as a matter of law, and for the reasons given in the foregoing memorandum, it is hereby **ORDERED** that the motion is **GRANTED** and **JUDGMENT IS HEREBY ENTERED** against plaintiff and in favor of defendant on all claims in the complaint.

This is a final Order.

---

**3.** Harris indicated in her brief that she was not arguing or presenting evidence in support of her breach of contract claim (Count IV) or her wrongful discharge claim (Count I). Accordingly, summary judgment will be granted in favor of SmithKline on those claims.