Anoop **TOLANI,**

v.

**UPPER SOUTHAMPTON TOWNSHIP.**

No. 00–CV–2797.

United States District Court,
E.D. Pennsylvania.

Aug. 9, 2001.

Michael A. Cancelliere, Jr., Philadelphia, PA, George W. Howard, III, Philadelphia, PA, for plaintiff.

George H. Knoell, III, Kane, Pugh, Knoell, & Driscoll, Norristown, PA, for defendant.

### MEMORANDUM & ORDER

KAUFFMAN, District Judge.

Plaintiff Anoop Tolani brings this action against Defendant Upper Southampton Township alleging discrimination on the basis of race, religion, national origin, disability, and age in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Stat. Ann. § 951 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.[1] Now before the

Court is Defendant's Motion for Summary Judgment (docket # 12). For the reasons set forth below, the Motion will be granted in part and denied in part.

### FACTUAL HISTORY[2]

Plaintiff, of Asian/Pacific Island race with a national origin/ancestry from India, worked for Defendant as a Finance Officer from 1987–1999, during which time, he was the only employee of his race, religion, and national origin. (Pl.'s Dep. at 9.) In January 1998, John Tegley ("Tegley"), a white male, became Plaintiff's supervisor and shortly thereafter, according to Plaintiff, "began a series of actions, false accusations, adverse treatment, disparate treatment, and discrimination against him because of his race, religion, and national origin." (Pl.'s Opp'n to Def.'s Summ. J. Mot. at 1.) Specifically, Plaintiff claims that Tegley called Indians "stupid," made derogatory comments about Indian women, and criticized the way Indian people worshiped and the food they ate. (Pl.'s Dep. at 14–16, 35–44.) Plaintiff also alleges that Tegley treated him differently than other employees by monitoring his bathroom time, moving him into a smaller office, and increasing his workload and job responsibilities in an attempt to create the false impression that Plaintiff was not performing his job. (Pl.'s Dep. at 13, 18–23, 49–50.) Furthermore, according to Plaintiff, he was the only employee, other than the telephone operator, not invited to the annual Christmas party and was often humil-

---

**1.** In his Pretrial Memorandum at page one, Plaintiff states that he "will voluntarily withdraw his claim[s] under the ADEA ... and the ADA." Accordingly, the Court will grant Defendant's Motion for Summary Judgment as to those claims.

**2.** The following facts are taken from the depositions and other attached exhibits to Defendant's Motion for Summary Judgment and

Plaintiff's Response to said Motion. For purposes of this Summary Judgment Motion, the Court must accept the "evidence in the light most favorable to the non-movant, giving that party the benefit of all reasonable inferences derived from the evidence." Waldron v. SL Indus., Inc., 56 F.3d 491, 496 (3d Cir.1995) (citations omitted).

iated by negative comments Tegley made about him in front of co-workers. (Pl.'s Dep. at 31–36, 139–143.)

Defendant terminated Plaintiff's employment on February 9, 1999, allegedly because he was misusing public funds.[3] Plaintiff claims, however, that Defendant falsely accused him of these acts and that his termination was based instead on his race, religion, and national origin.

### STANDARD FOR REVIEWING SUMMARY JUDGMENT MOTION UNDER FED. R. CIV. P. 56

In deciding a motion for summary judgment under Fed.R.Civ.P. 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial questions." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir.1997) (citing *Robinson v. PPG Indus. Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994)).

### ANALYSIS

## I. TITLE VII CLAIMS

Title VII of the Civil Rights Act of 1964 "makes it unlawful for an employer 'to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir.1999) (citing 42 U.S.C. § 2000e–2(a)(1)). In support of his Title VII claim, Plaintiff alleges that he was subjected to a hostile work environment and suffered disparate treatment as a result of his race, religion, and national origin.

### A. Hostile Work Environment

Defendant argues that Plaintiff has failed to produce sufficient factual evidence to support his hostile work environment claim. The Third Circuit has set forth five elements that a plaintiff must prove to state a claim for hostile work environment: (1) the employee suffered intentional discrimination because of his or her race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person; and (5) the existence of respondeat superior liability. *Clark v. Pennsylvania*, 885 F.Supp. 694, 712 (E.D.Pa.1995) (citing *Andrews v. Philadelphia*, 895 F.2d 1469, 1472 (3d Cir. 1990)). In determining whether a work environment is hostile, "the totality of the circumstances must be considered, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere

---

**3.** Defendant claims that it discovered Plaintiff was mishandling funds after an independent audit showed that one of his accounts had a negative cash balance of $80.00, as well as numerous unsubstantiated receipts and disbursements. (Def.'s Summ. J. Mot. at 2.)

offensive utterance, and whether it reasonably interferes with an employee's work performance." *Harris v. SmithKline Beecham*, 27 F.Supp.2d 569, 577 (E.D.Pa.1998). A single action may be sufficient to support a hostile work environment claim if the act is " 'of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work.' " *Id.* at 578. Generally, however, a plaintiff must show that he was subjected to " 'repeated, if not persistent acts of harassment.' " *Id.* (quoting *Bedford v. Southeastern Pennsylvania Transp. Auth.*, 867 F.Supp. 288, 297 (E.D.Pa.1994)).

■ To support his hostile work environment claim, Plaintiff alleges, *inter alia*, that Tegley referred to Indians as stupid and made derogatory comments about the way Indian people worship and Indian women dress. (Pl.'s Dep. at 14–16, 35–44.) Plaintiff also claims that Tegley harassed him by following him around, moving him into a smaller office, and increasing his workload and job responsibilities. (Pl.'s Dep. at 20–23, 49–50.) Reviewing the evidence in the light most favorable to Plaintiff and resolving all reasonable inferences in his favor, the Court finds that he has presented sufficient evidence to raise a genuine issue of material fact. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim will be denied.

### B. *Disparate Treatment*

■ Defendant argues that Plaintiff has failed to put forth sufficient evidence to support his claim for disparate treatment on the basis of race, religion, and national origin. To establish a prima facie case for disparate treatment under Title VII, the plaintiff must show that: "(1) [he] is a member of a protected class; (2)[he] was qualified for the position; (3)[he] was discharged from or denied the position, or suffered adverse employment consequences; and (4) that non-members of the protected class were treated more favorably." *Harris*, 27 F.Supp.2d at 578 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. Once the employer satisfies its "relatively light burden," "the burden of production rebounds to the plaintiff, who must [then] show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). "[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.* at 764.

■ Plaintiff has met his burden with regard to his disparate treatment claim. He is of Asian/Pacific Island race with a national origin/ancestry from India who worked as a Finance Officer for more than ten years. He claims that his discharge from the job was based on his race, religion, and national origin and that he was the only employee who suffered the discriminatory and harassing treatment discussed *supra*. (Pl.'s Opp'n to Def.'s Summ. J. Mot. at 13.)

■ In support of its Summary Judgment Motion, Defendant claims that Plaintiff was moved into a smaller office for business reasons and that his termination was a result of his unauthorized use of public funds. (Def.'s Summ. J. Mot. at 8–9.)

To counter Defendant's Motion, Plaintiff claims that Tegley falsely accused him of misusing petty cash funds and that the funds in dispute were spent on buying meals when he worked overtime and on buying supplies for the office. (Pl.'s Opp'n to Def.'s Summ. J. Mot. at 19.) Plaintiff contends that his supervisors, including Tegley, approved the transactions in questions and that it was a long-standing practice of employees to charge meals to Defendant when they worked late. (Pl.'s Dep. at 55–58, 113.) In support of his claim, Plaintiff offers affidavits of two former managers who stated that it was a permitted practice of Defendant's employees to use petty cash and cash advances for the purchase of office supplies and meals when they worked on evenings and weekends and that Plaintiff, as well as other employees, had authorization to use the funds in such a way. (*See* Aff. of Paul Janssen & Robert Pellegrino.) Tegley himself acknowledged that there was no formal written policy regarding petty cash disbursements when he became supervisor in 1998 and that new procedures for such disbursements were not put into place until April 1999, *after* Plaintiff was terminated. (Tegley's Dep. at 22; Ann Alker's Dep. at 13–14.) Plaintiff also offers letters of recommendation written on his behalf by two former supervisors in March 2000 as evidence that he was a conscientious worker who received solid annual audit reports. (Pl.'s Opp'n to Def.'s Summ. J. Mot., Exs. C & D.) Accordingly, the Court finds that a genuine issue of material fact exists and that Plaintiff has proffered sufficient evidence to survive Defendant's Motion for Summary Judgment.

## II. *PHRA CLAIMS*

In addition to his Title VII claims, Plaintiff sets forth claims for discrimination against Defendant under the PHRA. "Courts have uniformly interpreted the PHRA consistent with Title VII." *Harris*, 27 F.Supp.2d at 576. As Plaintiff's Title VII claims survive Defendant's Motion for Summary Judgment, his PHRA claims against Defendant survive as well.

An Order follows.

## *ORDER*

**AND NOW,** this day of August 2001, upon consideration of Defendant's Motion for Summary Judgment (docket # 12) and Plaintiff's Opposition thereto (docket # 13), **IT IS ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part as follows:

1) The Motion for Summary Judgment on Plaintiff's ADA claim is **GRANTED;**

2) The Motion for Summary Judgment on Plaintiff's ADEA claim is **GRANTED;**

3) The Motion for Summary Judgment on Plaintiff's Title VII claim is **DENIED;**

4) The Motion for Summary Judgment on Plaintiff's PHRA claim is **DENIED.**