19794

Ted K. O'SHIELDS and Patricia O'Shields, Respondents, v.
SOUTHERN FOUNTAIN MOBILE HOMES, INC., Appellant
(204 S. E. (2d) 50)

*Messrs. J. D. Todd, Jr.,* and *O. Doyle Martin,* of Greenville, *for Appellant,*

278

*Kenneth C. Porter, Esq.,* of Greenville, *for Respondents,*

April 1, 1974.

LEWIS, Justice:

Respondents brought this action to recover damages resulting from alleged fraud and deceit perpetrated by appellant in the sale to them of a mobile home. The trial resulted in a verdict in favor of respondents for both actual and punitive damages. While other questions are raised, we need only consider appellant's contention that there was no evidence to establish liability for fraud and deceit and that the trial judge erred in refusing its timely motion for a directed verdict on that ground. The material facts are undisputed.

It appears that respondents, after considerable shopping among various dealers, purchased a mobile home from appellant, a dealer at Greenville, South Carolina. Since respondents desired an unfurnished home and all of those in appellant's stock were furnished, a unit meeting the specifications of respondents was ordered by appellant from the manufacturer.

The sale of the mobile home was evidenced by a written "purchase agreement," dated January 16, 1973, which recited a down payment of $200.00 with a balance of $5644.00 to be paid "before delivery of the home." The agreement also specified the make or style of the home as "Plantation" and gave the color, number of bedrooms, the length, width, and model. In the space for "optional equipment, labor and accessories," it was specified that "all furniture including built in Refer (refrigerator) and range, bar, bar light and cabinet, and shag" would be deleted; and the following additions would be made (spelling as it appears in agreement) :

"Add : Total elect, house type windows Hi-Lo harvest gold in living room & master bedrm. Whitewood panel in both bdrms, Balsam in rest. Black & White accent wall in bathroom and kit. # 534. Tile in rest of house. Range hood and dryer respictile. Exterior brown and white."

Respondents were told by appellant's agent that, if they were not satisfied with the trailer home when it was delivered by the manufacturer, they did not have to accept it.

The home was delivered to the sales lot of appellant in February 1973, and shortly thereafter was inspected by respondents before it was delivered to them. At the time respondents inspected the unit on appellant's lot, they noticed that it varied from that which they had ordered in four particulars, namely: (1) the ceilings were seven (7) feet instead of eight (8); (2) it did not have exposed beams in the living room; (3) there were no "swag lights"; and (4) the hall was not carpeted. Respondents testified that the unit purchased by them was to have the foregoing items. In all other respects, the trailer home was as ordered.

Although respondents inspected the home, saw that in the foregoing particulars it was not as ordered by them, and had been told that they did not have to take the unit if they were not satisfied, they, nevertheless, paid the balance of the purchase price ($5644.00) and accepted delivery and installation of the trailer home on their lot about February 20, 1973.

Later, in April, after having occupied the home since the latter part of February, respondents received a manufacturer's certificate of origin which stated that the style or make of their mobile home was a "Vagabond," instead of a "Plantation" as their purchase agreement specified. Respondents then became dissatisfied and protested, contending that they had not received what they had ordered, since a "Vagabond" was a cheaper model than the "Plantation."

It developed, however, that the essential difference between the Vagabond and Plantation models was in the quality of the furnishings. The Plantation contained deluxe furnishings and the Vagabond less expensive ones.

Respondents contend that the appellant's agents fraudulently represented to them that they would receive a Plantation model mobile home containing

the above features, with no intention of fulfilling such promise and substituted the cheaper Vagabond model because the company would lose money under the contract as it was written. The mere fact, however, that a unit designated as a Vagabond model was delivered, instead of a Plantation, would, under this record, be of no consequence. This is true because respondents purchased an unfurnished trailer home and it is undisputed that there is no essential difference in quality and construction of the basic "chassis" and "shell" of the two units.

The basic contention of respondents was therefore that appellant had promised to deliver to them a trailer home containing, among other features, an eight (8) foot ceiling, exposed beams in the living room, swag lights, and carpeting in the hall, with no intention of fulfilling such promise. It is undisputed that, whether the trailer home be designated "Vagabond" or "Plantation," if it had contained the above four features, the unit delivered would have been of the quality and design specified in the purchase agreement, and respondents would have had no complaint.

It is well settled that, in order to recover in an action for fraud and deceit, based upon representation, the following elements must be shown by clear, cogent and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury. Failure to prove any one of the foregoing elements is fatal to recovery. *Carter v. Boyd Construction Company,* 255 S. C. 274, 178 S. E. (2d) 536; *Moye v. Wilson Motors, Inc.,* 254 S. C. 471, 176 S. E. (2d) 147.

Assuming that other elements are present, the record fails to show that respondents were ignorant of the omitted features of the mobile home or relied upon

appellant's alleged representations thereabout. The omission of the features complained of was open and easily observed. In fact, respondents readily admit that they did inspect the unit before it was delivered to them and saw that the four items were missing. They, nevertheless, without objection, accepted delivery, even though they had been previously advised by appellant that they did not have to do so if they were dissatisfied when the unit arrived.

We have recognized that "one cannot rely upon misstatement of facts, if the truth is easily within his reach." *Flowers v. Price,* 190 S. C. 392, 3 S. E. (2d) 38; *Thomas v. Jeffcoat,* 230 S. C. 126, 94 S. E. (2d) 240.

The present record shows that, if false representations were made as alleged, there was no actionable fraud, because respondents were fully aware of the falsity of the statements and had every opportunity to protect their interests. Since there is no showing that respondents were deceived by any representations of appellant's agents, the trial judge should have granted appellant's motion for a directed verdict.

Reversed and remanded for entry of judgment in favor of appellant.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.