**ARIES REALTY, INC., as assignee, Plaintiff,**

v.

**AGS COLUMBIA ASSOCIATES, AGS Properties, Albert G. Schmerge, III, Defendants.**

**No. 86 Civ. 5561 (WCC).**

United States District Court, S.D.New York.

Nov. 21, 1990.

As Amended Nov. 29, 1990.

Raichle, Banning, Weiss & Stephens, Buffalo, N.Y., for plaintiff; Arnold Weiss, of counsel.

Eaton & Van Winkle, New York City, for defendants; Peter J. Schmerge and Louis L. Benza, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff Aries Realty, Inc. ("Aries"), as assignee, brings this claim for damages, pursuant to the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") (collectively, the "Securities Laws"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against defendants AGS Columbia Associates, AGS Properties, and Albert G. Schmerge, III in connection with the sale in 1983 of limited partnership interests relating to a project known as New South Square Apartments in Columbia, South Carolina. This action is presently before the Court on defendants' motion for summary judgment pursuant to Rule 56(c) and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

### Background

In 1978, AGS Columbia Associates ("Columbia"), a South Carolina limited partnership of which Albert G. Schmerge, III ("Schmerge") is one of the general partners, purchased a garden apartment project located in Columbia, South Carolina (the "Apartments"). In 1982, former plaintiff Berkeley Columbia Associates ("Berkeley"), a limited partnership with its principal place of business in South Carolina, made Columbia an offer to acquire the Apartments through its affiliate Berkeley Square Realty Associates, Inc. ("Berkeley Square"). Defendants contend that the parties consummated the sale by executing a Purchase Agreement on April 28, 1983 (the "Agreement") after memorializing a preliminary agreement for the sale of the Apartments in a letter dated June 28, 1982. Plaintiff contends that it only executed a letter of intent as a result of negotiations with Defendants' affiliate broker.

Under the alleged Agreement, Berkeley Square was given "the right, subject to the First Mortgagee's approval, to simultaneously resell the property to a partnership (general or limited) in which an affiliate of Berkeley Square Realty Associates, Inc. is a general partner." Defendants' Exhibit A at 3. The Agreement provided that the Prudential Insurance Company of America ("Prudential"), which held a first mortgage on the Apartments, would have to consent to the transaction, and gave Berkeley the right to terminate the Agreement if Prudential requested a fee in excess of $2,500. Prudential eventually consented to the transfer for a fee of $250,000, which, except for the first $2,500 which the Agreement required Columbia to pay, Berkeley voluntarily elected to pay.

The Agreement also contained a disclaimer of warranties which referred to a "problem" with the pipes in the Apartments:

> Purchaser acknowledges that it has inspected the Property, is acquainted with the problem relating to pipes, and is otherwise acquainted with its condition (including, but not limited to, problems relating to pipes which have been breaking periodically) and shall take title "as is" in

its present condition and subject to reasonable use, wear, tear and natural deterioration between the date hereof and the Closing Date ... Seller has made no representations or warranties as to the condition of the Property or any financial or other information relating thereto, except as explicitly set forth herein. Defendants' Exhibit B at 31–32.

At about the same time, Berkeley prepared and distributed a private placement memorandum (the "Memorandum"). The Memorandum offered up to 35 limited partnership units for $86,000 each. The offering was conditioned upon the sale of the Apartments to Berkeley.

On June 28, 1983, Berkeley acquired title to the Apartments in accordance with the Agreement. Berkeley executed a purchase money wrap-around mortgage in favor of Columbia in the face amount of $6,250,000, and paid its obligations under the mortgage from June 1983 through April 1986. By January 1986, however, Berkeley reported that the financial condition of the Berkeley Square Apartments had continued to deteriorate. Berkeley also informed Columbia of numerous operational difficulties experienced at the Apartments. One of the problems it mentioned was that earlier that year a significant cold spell caused a substantial amount of plumbing pipes to burst in the apartments with concomitant flooding conditions. Defendants' Exhibit C at 1–2. Berkeley requested mortgage deferrals totalling $315,000. The parties' attempt to reach an agreement concerning the mortgage payments failed, and in June 1986, Berkeley indicated that it would not pay its May and June 1986 mortgage installments or required debt service. The mortgage was accelerated on June 24, 1986.

Berkeley commenced an action on July 9, 1986 in the South Carolina Court of Common Pleas, alleging that Columbia misrepresented the extent of the plumbing problem and that it was entitled to rescission and damages under state law. The next day, July 10, 1986, Columbia filed a foreclosure action against Berkeley in the same court. Berkeley's answer to the foreclosure complaint interposed a counterclaim which incorporated by reference the claims of Berkeley's own suit.

After filing its answer in the foreclosure action, Berkeley then transferred the Apartments to DFB Corporation ("DFB"), a corporation controlled and owned, at least in part, by former plaintiff Lanny A. Horwitz ("Horwitz"), which soon after filed a Chapter 11 bankruptcy petition in the Southern District of New York. In the original action against Columbia, Horwitz purported to represent a class of investors to whom limited partnership interests in the Apartments were sold immediately after Berkeley's purchase of the Apartments from Columbia. The class action allegations were abandoned in February 1989 and, with the Court's permission, an amended complaint was served.

The DFB bankruptcy case was transferred to the Southern District of South Carolina, and the Bankruptcy Judge there lifted the automatic stay of the state foreclosure action. The foreclosure action and counterclaims incorporating the claims of Berkeley's state court fraud suit were ultimately tried together in the South Carolina Court of Common Pleas before the Master in Equity for Richland County. After a five-day trial, the Court, on August 21, 1987, held that Berkeley "failed to establish any of the elements of fraud," and ordered a foreclosure and sale on December 29, 1987. *AGS Columbia Associates v. Berkeley Columbia Associates*, No. 87–CP–40–2123, slip. op. at 3 & 9 (C.P. Richland County, S.C. Dec. 29, 1987). That decision was affirmed by opinion of the South Carolina Circuit Court, Fifth Judicial District, on December 29, 1987.

This action was commenced on July 16, 1986. Aries is the assignee of, and successor in interest to, DFB, which was the assignee of, and successor in interest to, Berkeley and its partners with respect to all of their rights and actions and claims against defendants herein. Berkeley, Horwitz, and the two other limited partners of Berkeley are no longer plaintiffs in this action. Relief is sought under the Securities Laws and RICO. The amended com-

plaint also added a claim of relief for "fraudulent conspiracy." On this motion, defendants contend that (1) the Securities Laws are inapplicable; and (2) there was no fraud, and therefore no violation of RICO. Defendants further argue that the judgment of the South Carolina State Court dismissing plaintiff's allegations of fraud against defendants bars plaintiff from relitigating those allegations before this Court.

## Discussion

### Standard for Summary Judgment

■ A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed.R. Civ.P. 56(c); *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11. The inquiry under a motion for summary judgment is thus the same as that under a motion for directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Because this Court concludes, as a matter of law, that the doctrines of collateral estoppel and *res judicata* bar relitigation of plaintiff's claims, summary judgment may be granted without reaching the merits of those claims.

### Defendants' Argument

The common central premise of plaintiff's claims now before the Court is that defendants misrepresented the facts concerning the nature of the plumbing and flooding problems at the Apartment and their ability to obtain the consent of the first mortgagee for the estimated fee. In bringing their motion, defendants argue that plaintiff's allegations are the same as those Berkeley unsuccessfully litigated in South Carolina state court and that plaintiff, as assignee of the claims, is now collaterally estopped from relitigating those claims before this Court under the guise of the Securities Laws and RICO. Additionally, defendants assert that because plaintiff's assignor failed to bring its alleged RICO and fraudulent conspiracy claims in the South Carolina state court action, plaintiff is now barred by South Carolina's law of claim preclusion (*res judicata*) from litigating such claims at this juncture.

■ The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the "full faith and credit" statute, 28 U.S.C. § 1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." In *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), the Supreme Court held that "§ 1738 requires a federal court to first look at state preclusion law in determining the preclusive effect of a state court judgment" and give the same full faith and credit to the judgment that it would receive in the state court. *Id.* at 381, 105 S.Ct. at 1332. Since this procedure applies to both issue preclusion (collateral estoppel) and claim preclusion (*res judicata*), this Court relies in the first instance on the preclusion principles of South Carolina law to determine the extent to which the earlier state court judgment bars subsequent litigation here.

### (a) Standard for Collateral Estoppel

■ Under South Carolina law, the doctrine of collateral estoppel precludes a party from relitigating an issue which was outcome determinative in previous litiga-

tion. *See Irby v. Richardson*, 278 S.C. 484, 298 S.E.2d 452 (1982). To preclude the relitigation of a particular issue, the party seeking to assert collateral estoppel has to establish that the issue in question was litigated in a prior proceeding and that the party against whom he seeks to assert collateral estoppel "had a full and fair opportunity to litigate the relevant issue effectively in the prior action." *Graham v. State Farm Fire & Casualty Ins. Co.*, 277 S.C. 389, 287 S.E.2d 495, 496 (1982).

### (b) Standard for Res Judicata

■ As with the doctrine of collateral estoppel, the preclusive effect to be given a state court judgment is determined by the law of the state rendering the judgment. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381–82, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1985). Under South Carolina law, *res judicata* precludes not only the relitigation of claims and issues that were decided but also claims and issues which could have been presented for determination. *Mackey v. Frazier*, 234 S.C. 81, 106 S.E.2d 895 (1959). The doctrine of res judicata operates where: (1) there is an identity of the parties or their privies, (2) there is an identity of the subject matter of the litigation, and (3) there was a final determination on the merits of the claim in the prior action. *Wessinger v. Rauch*, 288 S.C. 157, 159, 341 S.E.2d 643, 644 (Ct.App.1986). Where these requirements are met, the judgment is an absolute bar not only of what was decided but what might have been decided. *See Mackey v. Frazier*, 234 S.C. 81, 106 S.E.2d at 899 (1959).

### 1. The Integrity of the State Court Proceeding and its Relevancy to the Doctrine of Preclusion

■ Plaintiff argues that the South Carolina state court judgment was the product of defective proceedings and therefore must be denied preclusive effect by this Court. It is true that a state court judicial ruling which was the product of flawed proceedings could not be given preclusive effect in a subsequent federal action. However, plaintiff's submissions in opposition to the motion fail to raise a triable issue as to whether infirmities in the South Carolina litigation justify denying full faith and credit to the findings of the Master in Equity which were later confirmed by the intermediate appellate court and the Supreme Court of South Carolina.

■ While the infirmities conclusorily listed by plaintiff would be sufficiently serious to prevent application of the preclusion principles asserted by defendants, all of them have either been addressed by the South Carolina courts or heretofore ignored by plaintiff. Plaintiff now alleges that (1) the trial record is "incongruous" and does not support the trial court's decision; (2) plaintiff was denied its right to a jury trial in South Carolina; (3) the trial court's findings and conclusions were drawn by defendants' counsel; (4) the South Carolina appellate court denied plaintiff "due process of law"; and (5) there was no "final appeal" to the Supreme Court of South Carolina. However, plaintiff fails to present sufficient evidentiary support for any of these contentions.

With regard to the question of plaintiff's assignor having had a "full and fair" opportunity to litigate his claims, there is no question from the transcript of record and the state court's opinion that "plaintiff had his day in court." *See Graham v. State Farm Fire & Casualty Ins. Co.*, 277 S.C. 389, 287 S.E.2d 495 (1982).[1] The state proceedings were pursued vigorously by attor-

---

**1.** While the privity requirement is not contested here by plaintiff, the South Carolina Supreme Court has recognized estoppel by judgment without privity in the case of *Jenkins v. Atlantic C.L.R. Co.*, 89 S.C. 408, 71 S.E. 1010 (1911), and in the case of *Watson v. Goldsmith*, 205 S.C. 215, 31 S.E.2d 317 (1944). In *Jenkins*, the Court stated the following:

> ... the principle of estoppel should be expanded, so as to embrace within the estoppel of a judgment, persons who are not, strictly speaking, either parties or privies. It is rested upon the wholesome principle which allows every litigant one opportunity to try his case on the merits, but limits him, in the interest of the public, to one such opportunity. 89 S.C. at 421, 71 S.E. 1010.

neys whose competence has not been challenged and resulted in a decision that was confirmed at all levels of the South Carolina judiciary. The Court must therefore give full faith and credit to the state court's decision and decide the issues of claim and issue preclusion based thereon.

*2. The Preclusive Effect of Claims Asserted in State Court Upon the Claims Before This Court*

 Plaintiff further contends that the claims presently before the Court are not identical to those litigated in South Carolina state court, so that the judgment there is not determinative here. However, the elements of the securities claims here are essentially the same as those of the fraud claims in the prior litigation. In order to prove fraud under South Carolina law, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearers' ignorance of its falsity; (7) the hearers' reliance on its truth; (8) the hearers' right to rely thereon; and (9) the hearers' consequent and proximate injury.[2] *O'Shields v. Southern Fountain Mobile Homes, Inc.*, 262 S.C. 276, 204 S.E.2d 50 (1974); *King v. Oxford*, 282 S.C. 307, 318 S.E.2d 125 (App.1984); *Florentine Corp. v. PEDA I, Inc.*, 287 S.C. 382, 339 S.E.2d 112 (1985).

In order for plaintiff to succeed on its present claims under Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, plaintiff must show on the part of defendants (a) a materially false representation, (b) scienter, (c) intent to deceive, manipulate or defraud, and (d) reliance on the representation, which (e) proximately caused the injury. *See Jackson v. Oppenheim*, 411 F.Supp. 659, (S.D.N.Y.1974), *aff'd in part and rev'd in part, Jackson v. Oppenheim*, 533 F.2d 826 (2nd Cir.1976) (elements to be proven in an action under § 17 of the Securities Act of 1933 and 15 U.S.C. § 78j dealing with fraud in connection with the sale of securities are scienter, materiality, reliance, and due care). *See also Lloyd v. Industrial Bio–Test Laboratories, Inc.*, 454 F.Supp. 807 (S.D.N.Y. 1978); *Huddleston v. Herman and MacLean*, 640 F.2d 534, 543 (5th Cir.1981), *aff'd in part and rev'd in part*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

Plaintiff contends that the application of collateral estoppel in the instant action would be improper because a less onerous standard of proof applies to the claims currently before the Court, as compared with the fraud claims litigated at the state level. This Court disagrees. There is no doubt that for the application of collateral estoppel to be appropriate, not only must the issue as to which preclusion is sought be identical with an issue decided in the prior proceeding, but the applicable standards of proof must not be significantly different. *See Cullen v. Margiotta*, 811 F.2d 698 (2nd Cir.) *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Murphy v. Gallagher*, 761 F.2d 878 (2d Cir.1985).[3] However, plaintiff has failed to establish that there is any difference between the standard of proof here and that in the South Carolina litigation, and our research fails to reveal any. *Compare O'Shields v. Southern Fountain Mobile Homes, Inc.*, 262 S.C. 276, 204 S.E.2d 50 (1974) *with Jackson v. Oppenheim*, 411 F.Supp. 659

---

**2.** In no uncertain terms, the South Carolina Circuit Court, in its affirmance of the Master's final order and judgment of foreclosure and sale, noted:

> In the present case, Appellant has failed to establish any of the elements of fraud with respect to its various allegations. The Master's findings are fully confirmed by the record and, in this Court's view, the result reached was correct and proper. *Appendix of Exhibits to Defendants' Motion for Summary Judgment*, Exhibit K.

**3.** In *Cullen v. Margiotta*, 811 F.2d 698 (2nd Cir. 1987), the state court and the federal court differed significantly over the permissibility of class actions. The state and federal standards governing the propriety of the class action were so divergent so as to lead the federal court to determine that the state court ruling did not decide the issue presented and therefore collateral estoppel was inappropriate.

(S.D.N.Y.1974), *aff'd in part and rev'd in part, Jackson v. Oppenheim*, 533 F.2d 826 (2nd Cir.1976).

In furtherance of its argument, plaintiff asserts that if its counsel had pled and argued the South Carolina Securities Fraud Statute § 35-1-1490 rather than South Carolina's Statute of Elizabeth, a far different result would have occurred. This assertion is inapposite to this case. It is of no import whether or not the pleadings in the state court action were lodged pursuant to the South Carolina securities laws or made under the state's common law fraud statute to the extent there is identity of issues between the claims ultimately decided upon by the state court and those asserted here. Accordingly, plaintiff is collaterally estopped from pursuing his claims under the Securities Laws before this Court.

*3. Res Judicata and Plaintiff's Conspiracy and RICO Claims*

■ The application of South Carolina's collateral estoppel doctrine also bars plaintiff from litigating its alleged RICO and fraudulent conspiracy claims before this Court. As noted above, collateral estoppel is applicable where the prior state law claim and the subsequent federal action involve essentially the same underlying factual allegations. That is the situation here. Plaintiff's RICO and conspiracy claims in this action are predicated upon alleged acts of mail and wire fraud. These issues were fully litigated in the state action in which the South Carolina court ruled on the propriety of each element of the alleged scheme to defraud. *See County of Cook v. MidCon Corp.*, 773 F.2d 892, 899–900 (7th Cir.1985) (dismissal of a RICO action on collateral estoppel grounds because "the propriety of each element of the alleged scheme to defraud was previously decided in the state court ... all the essential features of the alleged scheme to defraud were already considered, and found to be without merit ..."). Plaintiff cannot escape the effect of a prior determination by "clothing the claim in a different garb." *Frost v. Bankers Commercial Corp.*, 11 F.R.D. 195 (S.D.N.Y.1951), *aff'd*, 194 F.2d 505 (2d Cir.1952).

■ The elements required by *Mackey v. Frazier, supra,* to establish a defense of *res judicata* are also satisfied with respect to the RICO claim. The Court concludes that, (1) the parties are in privity with each other; (2) the subject matter of the pending action is closely akin to that of the litigation completed in South Carolina; and (3) the state court judgment stands as an absolute bar not only of what was decided at the state level but what might have been decided had all of the claims which arose out of the controversy between the parties been raised in the South Carolina action.

There is no dispute that plaintiff, Aries Realty, Inc., is in privity with DFB as the assignee of the latter's claim. The Court concurs with defendants' assertion that since an assignor cannot assign an interest greater than his own, plaintiff is bound by the decision of the state court to the full extent that DFB, Berkeley and Horwitz are bound thereby. Moreover, it is alleged that both DFB and Aries are wholly owned by Horwitz.

With respect to the second part of the standard set out in *Mackey*, the "subject matter" requirement of *res judicata* is also met here. South Carolina law refers to the "general concern" of a prior action for purposes of determining the preclusive effect of a state court judgment in a subsequent proceeding. *See Hines v. Farr*, 235 S.C. 436, 112 S.E.2d 33 (1960); *Murphy v. Brown*, 262 S.C. 513, 205 S.E.2d 839 (1974). By following South Carolina's practice, this Court finds the core of the controversy before it to be essentially the same as that in the South Carolina litigation, to wit, defendants' allegedly fraudulent misrepresentations concerning flooding and plumbing problems at the Apartments and the availability of Prudential's consent to the sale to Berkeley for $2,500.

The third component of *res judicata* under *Mackey* requiring a prior ruling on the precise point before the court or a failure by one of the parties to assert what might have been decided is met here as well. Plaintiff could have brought its alleged RICO claim in the South Carolina action. In *Tafflin v. Levitt*, —— U.S. ——, 110 S.Ct.

792, 107 L.Ed.2d 887 (1990), *in part, Tafflin v. Levitt,* 865 F.2d 595 (4th Cir.1989), the Supreme Court ruled that state courts have concurrent jurisdiction with the federal courts over civil RICO actions brought under the federal RICO statute. Moreover, South Carolina law did not prevent plaintiff from asserting its alleged RICO claim in state proceedings. The Supreme Court noted in *Lou v. Belzberg,* 834 F.2d 730 at 738 (9th Cir.1987) quoting from *HMK Corp. v. Walsey,* 637 F.Supp. 710, 717 (E.D.Va.1986), *affirmed,* 828 F.2d 1071 (4th Cir.1987)

> The vast majority of RICO cases involve garden variety state law fraud, where the plaintiff has simply seized upon RICO to obtain federal jurisdiction, treble damages and attorneys' fees. If anything, RICO involves federal courts in the adjudication of state law claims, rather than the other way around.

Plaintiff could have asserted its alleged RICO and fraudulent conspiracy claims at the time it asserted its related claims of fraud, unfair trade practices, and negligence against defendants in the South Carolina action.

Thus, plaintiff's attempt to litigate the alleged RICO and fraudulent conspiracy claims before this Court is barred by both collateral estoppel and *res judicata.*

*Sanctions Pursuant to Rule 11*

█ Plaintiff's failure to discontinue this action was not so objectively unreasonable as to support the imposition of Rule 11 sanctions. *See McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17 (2nd Cir.1990). Sanctions must be imposed on the signer of a paper if either (a) the paper is filed for an improper purpose, or (b) the paper is "frivolous." *See Zaldivar v. Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986). The term "frivolous" describes a filing that is both baseless and made without a reasonable and competent inquiry. Plaintiff's action here is not frivolous nor is it evident that plaintiff's claims are pursued here for an improper purpose.

Rule 11 is *not* a license for the Court to sanction *any* action by an attorney or party with which it disagrees. *See F.H. Krear &*

*Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1268 (2d Cir.1987). Plaintiff's claims before this Court are not so clearly barred by collateral estoppel or *res judicata* that the Court could conclude that plaintiff's complaint was served for any improper purpose such as to harass or to cause unnecessary delay. Accordingly, defendants' motion for sanctions against plaintiff and its attorneys is denied.

*Conclusion*

For the reasons stated above, defendants' motion for summary judgment is granted and this action is dismissed. Defendants' request for sanctions pursuant to Rule 11 is denied.

SO ORDERED.