Terry A. MROCZEK,

v.

**BETHLEHEM STEEL CORPORATION and Mark Reid.**

**No. CIV.A. 99–CV–4049.**

United States District Court, E.D. Pennsylvania.

Jan. 2, 2001.

Alan B. Epstein, Nancy Abrams, Spector, Gadon & Rosen, P.C., Philadelphia, PA, for plaintiff.

Maria E. Rodriguez, Venable, Baetjer and Howard, Baltimore, MD, Kathleen Mills, Bethlehem, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case has been brought before the Court on motion of the defendants for summary judgment. Having now carefully reviewed the record produced by the parties and for the reasons set forth below, the motion shall be granted and judgment in favor of the defendants as a matter of law shall be entered.

### Factual Background

On September 21, 1993, Plaintiff, Terry Mroczek began working as an Employee/Organization Development Specialist in the Human Resources Department at Lukens Steel Company, Bethlehem Steel Corporation's predecessor-in-interest, in Coatesville, Pennsylvania. At that time, Plaintiff was one of two such specialists in the Human Resources Department working under the direct supervision of Hal King doing employee training, performance management, teams and facilitation. Shortly after Plaintiff was hired, however, Mr. King left Lukens and Plaintiff became one of the members of an eight-member self-directed "OD" team which reported directly to the Vice President of Human Resources, Richard Luzzi.[1] Mr. Luzzi directed the self-directed team to elect a leader, and Plaintiff was chosen. Plaintiff was very happy working under Mr. Luzzi, as he gave the team a great deal of freedom and autonomy. Mr. Luzzi, in turn, appeared to be pleased with Plaintiff's job performance as he gave her ratings of "outstanding" and "excellent" at her annual reviews in September, 1995 and September, 1996.

---

1. The Occupation Development group had merged with another work group, known as Total Quality Leadership with the result that the OD group grew from five to eight members. The self-directed team functioned somewhat differently in that rather than receiving job assignments from a group manager (who had been Mr. King), the team members instead contacted and/or were contacted by the individual departments directly for services.

As part of the overall functioning of the self-directed team, the team members divided up the various operations and divisions within Lukens and each team member was assigned certain operations and/or departments for whom they would be the contact person. Plaintiff became the contact person for Lukens' operations in Conshohocken and Washington Specialty Metals. It thus became necessary for her to develop a relationship of trust and confidence with the Human Resources and Plant Managers at those locations, one of whom was Defendant Mark Reid, the HR Manager at the Conshohocken facility. According to Plaintiff, she and Reid became friends, going out for lunch together from time-to-time and for drinks after work on several occasions.

Plaintiff avers that it was sometime during 1995 when they were having drinks together at the Valley Forge Brewing Company that defendant Reid first told her that he was attracted to her and that he told her the same thing again in the summer of 1996. Mr. Reid said nothing else and did nothing else on either of those two occasions. Although plaintiff was uncomfortable about those remarks, she was not offended and did not report them to anyone nor did she tell Mr. Reid that she thought his remarks were inappropriate. Between 1995 and 1996, defendant Reid also remarked on some six different occasions about the number of women with whom he had sexual relations and about his sexual prowess. Plaintiff did not complain to anyone about any of these remarks either, but did tell Reid that she didn't want to hear about his sex life and he stopped talking about it. Also in this same time frame and on three separate occasions, a drawing depicting an oral sex act, a dildo, and a letter regarding foot fetishes were left on Plaintiff's desk in her office in Lukens' Conshohocken facility. Although plaintiff did report the dildo and the drawing to Mr. Reid, she did not do so immediately after finding them and Reid undertook no investigation to her knowledge. She reported the letter to John De

Marco, the Labor Relations Manager who, in turn, contacted Security and a camera was installed in plaintiff's office in the hopes that the person who left the letter would return. The surveillance in Plaintiff's office did not turn anything up, however, and the camera was removed a few weeks after it was installed.

In January, 1997, Richard Luzzi determined that the self-directed OD group was no longer functioning as well as he believed it could be and he then promoted Mark Reid to head up the group, which was based at Lukens' corporate headquarters in Coatesville. Plaintiff, who did not believe there was any reason to have Reid promoted, was not happy that he became her immediate supervisor. Thereafter, Ms. Mroczek by her own admission, said very little at staff meetings and generally behaved in a manner which could be interpreted as meaning that there was a problem between herself and Mr. Reid. On January 14, 1997, Reid went into Plaintiff's office and asked her why she was being so distant with him as they previously had been so close and he told her that he wanted to have a relationship with her. When Plaintiff informed him that as far as she was concerned, he was her boss, she was his subordinate and that while she would continue to do good work for him as she had at Conshohocken, there was not going to be a relationship beyond that. Mr. Reid responded that that wasn't good enough. Mr. Reid then brought up an incident in which he alleged that Plaintiff had breached his confidence by telling a fellow co-worker something which ·Reid had said and said that he could tell Mr. Luzzi anything since he was Mr. Luzzi's confidante and Mr. Luzzi would not ask him for an explanation.

Ms. Mroczek interpreted these remarks as a threat to her employment and she reported these remarks to the company EEO officer, Karen Angeny, the following day. Ms. Angeny told her that she should discuss the matter with Mr. Luzzi as Mr.

Reid was also her supervisor. On January 31, 1997, Plaintiff met with Mr. Luzzi, who assured her that he would speak with Mr. Reid. Mr. Luzzi subsequently discussed with Mr. Reid his working relationship with Ms. Mroczek and the necessity of the two of them developing a good, solid working relationship.

Although Plaintiff avers no other, similar incidents involving Mark Reid subsequent to their January 14, 1997 meeting, there continued to be problems in their working relationship, which Reid began to document by taking notes on Plaintiff's performance. At Plaintiff's annual evaluation in September, 1997, she still received an overall positive review, but was noted to "need development" in the area of building relationships. Plaintiff therefore received the lowest rating that she had ever received since first becoming employed at Lukens, "Good Solid Performer," and received a much smaller raise than those given previously. Nevertheless, Plaintiff did not indicate that she disagreed with the comments made nor did she contest her appraisal.

The following year, in late February or early March, 1998, Plaintiff and a number of other employees from the Conshohocken facility were having drinks after the Conshohocken annual meeting at a local bar when the subject of the vacant position of Human Resources manager at Conshohocken arose. Several people began questioning Ms. Mroczek as to whether she had applied for the position or if she didn't, whether she knew who was going to fill the position. While Plaintiff contends that she did not reveal any confidences, one of the Conshohocken plant superintendents, Dennis Sullivan, told the Plant Manager, Gary Sarpen, that Plaintiff had said that she knew who was going to get the position, "it was a done deal," and that the job belonged to Tracy Schindler, one of Ms. Mroczek's co-workers in Organization Development. Since the company was still conducting interviews for the position, Mr. Sarpen was angered by this purported disclosure and told Plaintiff that she was "banned" from working in the Conshohocken plant.

At or around this same time, Mr. Luzzi began receiving complaints about Plaintiff's job performance from a number of other Lukens' department heads, who also indicated an unwillingness to have Plaintiff continue working for them. Plaintiff was quite upset by these developments and took several weeks of sick leave from work. Although Mr. Luzzi had told her that he would speak with Sarpen about reversing his decision, he was unable to convince him to do so. Given that Luzzi believed that Plaintiff had lost her credibility within the company and that there was no work for her to do, he terminated her in May, 1998. Plaintiff thereafter filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission on June 24, 1998. She commenced this lawsuit on August 11, 1999 and, following the completion of discovery, Defendants filed their motion for summary judgment on August 29, 2000.

### Summary Judgment Standards

The standards governing the disposition of motions for summary judgment are outlined in Fed.R.Civ.P. 56. That rule, reads, in relevant part at subsection (c):

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial.

*Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e). If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted. *Gyda v. Temple University,* 2000 WL 675722 at *4 (E.D.Pa.2000), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, while summary judgment is usually disfavored in employment discrimination cases, it is appropriate when a plaintiff relies on mere inferences, conjecture, speculation or suspicions. *Anderson v. School District of Philadelphia,* 1998 WL 151034 at *5 (E.D.Pa.1998).

Similarly, summary judgment may not be granted if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 744 (3rd Cir. 1996), citing *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1381 (3rd Cir.1991). Moreover, "any unexplained gaps in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment." *Id.,* quoting *Ingersoll–Rand Financial Corp. v. Anderson,* 921 F.2d 497, 502 (3rd Cir.1990).

### Discussion

1. *Viability of Plaintiff's Claims for Sexual Harassment*

Defendants first argue that Ms. Mroczek's claims for sexual harassment must be dismissed due to her failure to present them in her administrative filings with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") and her failure to raise them in a timely fashion.

In general, before filing a Title VII suit, an employee charging an employer with discrimination must file a complaint with the EEOC and allow 180 days to pass during which the EEOC will attempt to resolve the dispute without resorting to litigation. At the end of the 180 day period the employee is entitled to sue, regardless of the pendency of EEOC proceedings. *Waiters v. Parsons,* 729 F.2d 233, 237 (1984); 42 U.S.C. § 2000e–5(f). The PHRA includes a similar requirement, albeit with a one-year waiting period before suit may be instituted. 43 P.S. § 962(c)(1). *See Also: Trevino–Barton v. Pittsburgh National Bank,* 919 F.2d 874, 878–879 (3rd Cir.1990); *Watson v. SEPTA,* 1997 WL 560181 *4, *6 (E.D.Pa.1997).

■ Of course, before a claim can be considered to have been exhausted, it

must have been included in a plaintiff's charge to the administrative agency. The relevant test in determining whether a plaintiff was required to exhaust her administrative remedies is whether the acts alleged in the subsequent suit are fairly within the scope of the prior administrative charges or the investigation(s) arising therefrom. *Antol v. Perry,* 82 F.3d 1291, 1295 (3rd Cir.1996), citing *Waiters v. Parsons,* 729 F.2d at 237. *See Also: Harris v. SmithKline Beecham,* 27 F.Supp.2d 569 (E.D.Pa.1998).

In this case, the cause of discrimination box was marked for retaliation only on the Charge of Discrimination which Ms. Mroczek filed with the EEOC and which was referred to the PHRC. The narrative section of the charge form on which the complainant is to describe the particulars, however, reads as follows:

> Between 1995 and 1996, I was subjected to sexual harassment from Mr. Mark Reid who at the time was my co-worker. In January, 1997, Mr. Reid was promoted to Human Resources Manager--Corporate and he became my immediate supervisor. During the first three weeks, Mr. Reid continued to sexually harass me and even made sexually explicit comments to my co-workers about me. I complained to Mr. Rick Luzzi, Vice President Human Resources, about the sexual harassment. Although Mr. Luzzi stated that he would talk to Mr. Reid about his conduct, to the best of my knowledge, no action was ever taken. However, during 1997, Mr. Reid removed major duties from me and in September, 1997, I received the lowest merit increase and performance rating since my employment with Respondent. On February 9, 1998, I attended an annual meeting scheduled in Conshohocken. After the meeting, a group of my co-workers and I went out for drinks. We engaged in a conversation regarding a position which became available and speculations were made as to who would fill the vacancy. I never made any com-

> ment about who would be selected. Nevertheless, I received a call on March 2, 1998 from Mr. Gary Sarpen, General Manager of the Conshohocken plant, telling me that I was banned from the plant and was no longer welcomed at the facility. When I confronted Mr. Reid about Mr. Sarpen's decision, he stated that he was aware of the situation but he failed to advise me of these developments. On March 4, 1998, I spoke to Mr. Luzzi about the situation and he promised to look into the matter. As a result of this pressure, on March 12, 1998, I went out on stress leave. Mr. Luzzi scheduled a meeting with me for March 25, 1998 at which time he told me that I was being terminated and a severance package would be offered to me. On April 14, 1998, I was given a General Release Agreement to sign and return to Ms. Karen Angeny between May 6, 1998 and May 8, 1998.

> Mr. Sarpen stated that I was being banned from the Conshohocken facility because I spread rumors. Mr. Luzzi told me that termination was best because "my credibility was shot."

> I believe that I have been retaliated against for having complained of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

In her narrative, the plaintiff clearly gave sufficient details such that sexual harassment, in addition to retaliation for reporting it, may be said to have been within the scope of the complaints presented to and the investigation undertaken by either or both administrative agencies. We therefore conclude that the plaintiff adequately exhausted her administrative remedies.

This conclusion notwithstanding, we find that the plaintiff's claims for sexual harassment are time-barred.

Under Title VII, a plaintiff must file a complaint within 300 days of the alleged discriminatory conduct if the plaintiff has filed a complaint with a local or state

agency such as the PHRC. *Pittman v. Continental Airlines, Inc.,* 35 F.Supp.2d 434, 441 (E.D.Pa.1999); 42 U.S.C. § 2000e–5(3). Under the PHRA, a plaintiff must file with the PHRC within 180 days of the discriminatory conduct; thus any facts barred for Title VII purposes are barred for purposes of the PHRA claim. *Id.;* 43 P.S. § 959(h).

While these requirements sound exacting, the Supreme Court has recognized that the filing of a timely charge is a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling, such as may occur where the conduct complained of may be found to be a "continuing violation." *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 480–481 (3rd Cir.1997). The continuing violations theory allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period. *Saylor v. Ridge,* 989 F.Supp. 680, 684 (E.D.Pa.1998), citing *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). *See Also: 287 Corporate Center Associates v. Township of Bridgewater,* 101 F.3d 320, 324 (3rd Cir.1996). Thus, the continuing violations theory allows a plaintiff to pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant. *Rush v. Scott Specialty,* 113 F.3d at 481; *West v. Philadelphia Electric Co.,* 45 F.3d 744, 754 (3rd Cir.1995).[2]

In applying the foregoing principles to the case at hand, we note that Plaintiff's Charge of Discrimination alleges that she was sexually harassed by Mark Reid between 1995 and 1996 and during the first three weeks of January 1997 following his promotion. Plaintiff's deposition testimony is in accord with her Charge and there is no evidence anywhere on this record that Mr. Reid's alleged harassment of plaintiff occurred at any times other than those to which Ms. Mroczek herself testified. As Plaintiff further testified, she did not find Mr. Reid's comments offensive when they were made in 1995 and 1996 and she did not complain about them. Similarly, in January, 1997 after Plaintiff told Mark Reid that while she would continue to do good work for him just as she had in the past there would be no "relationship" between them which entailed more than work, there was no further discussion between the two of them regarding the subject and there are no allegations of sexual harassment after that. We therefore simply cannot find a continuing pattern of discrimination or harassment from the record produced here.

Given that the last occurrence of harassment of which Plaintiff complains occurred more than 300 days before she filed her Charge of Discrimination, we thus can reach no other conclusion but that her claims of sexual harassment for Mark Reid's verbal remarks to her and for the corporate defendant's toleration of Reid's actions after she complained, are time-barred.

2. *Plaintiff's Claims for Unlawful Retaliation*

Plaintiff also contends that Defendants illegally discriminated against her for complaining of sexual harassment. In so doing, Plaintiff invokes the provisions of 42 U.S.C. § 2000e–3(a) and 43 P.S. § 955(d), which state, in relevant part:

> plaintiff must also demonstrate a continuing pattern of discrimination and show that the harassment does not consist simply of isolated or sporadic acts of discrimination ..., citing *Rush v. Scott Specialty Gases,* 113 F.3d at 481.

**2.** As Judge Kauffman observed in *Pittman v. Continental Airlines,* 35 F.Supp.2d at 441,

... To take advantage of the continuing violation theory, the plaintiff first must show that at least one discriminatory act occurred within the 300–day period. The

## § 2000e–3. Other unlawful employment practices

### (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

## § 955. Unlawful Discriminatory Practices

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

. . . . .

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

The analysis of a summary judgment motion in a Title VII action must proceed in three steps following the traditional burden-shifting mechanism first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Clarkson v. Pennsylvania State Police*, 2000 WL 1513773 *5 (E.D.Pa.2000); *Lidwell v. University Park Nursing Care Center*, 116 F.Supp.2d 571 (M.D.Pa.2000). First, the court must evaluate if plaintiff has offered evidence sufficient to establish a prima facie case of retaliation. If plaintiff successfully establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action taken. Finally, if the defendant offers a non-retaliatory reason, plaintiff must demonstrate sufficient evidence from which a factfinder might find the reason offered is pretextual. *Id.; Harris v. Smithkline Beecham*, 27 F.Supp.2d at 579.

■ To advance a prima facie case of retaliation, a plaintiff must show that: (1) the employee engaged in protected activity; (2) the employer took an adverse employment action after or contemporaneous with the plaintiff's protected activity; and (3) a causal link exists between the plaintiff's protected activity and the employer's adverse action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3rd Cir. 2000); *Nelson v. Upsala College*, 51 F.3d 383, 386 (3rd Cir.1995).

■ Protected activity may include opposition to a practice made unlawful by Title VII or participation in a Title VII investigation, proceeding, or hearing by making a charge, testifying or otherwise assisting. *Clarkson*, 2000 WL 1513773 at *5. Accordingly, we find that in registering an internal complaint regarding what she believed to be sexually harassing behavior on the part of Mr. Reid, Ms. Mroczek engaged in protected activity.

■ To establish an adverse employment action, a plaintiff must demonstrate that the defendant's retaliatory conduct is such that it altered the employee's compensation, terms, conditions or privileges of employment, deprived him or her of employment opportunities or adversely affected his or her status as an employee. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997). Not everything

that makes an employee unhappy qualifies as retaliation. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. *Id.; Clarkson*, 2000 WL 1513773 *6.

 Here, there is evidence that shortly after Mr. Reid's promotion to the Corporate Human Resources Manager and his indication to Ms. Mroczek that he desired to have a relationship with her, Reid replaced plaintiff as the liaison or "lead" person on a number of the projects that the Organization Development department was working on and she was subsequently terminated from her employment a little more than a year after she registered her complaint. We therefore find that she has successfully established that she suffered an adverse employment action.

 In cases where a plaintiff must illustrate a "causal link" for purposes of establishing retaliation, or show that certain conduct was "used" as a basis for employment decisions, a plaintiff may rely upon a broad array of evidence to do so. *Farrell v. Planters Lifesavers*, 206 F.3d at 283–84. Such evidence may include a showing: (1) of temporal proximity between the protected activity and the adverse employment action; (2) a pattern of antagonism or retaliatory animus on the part of the employer; (3) that the employer gave inconsistent reasons for taking the adverse employment action against the employee; (4) the manner in which the employer behaves toward others; (5) a refusal on the part of the employer to provide a reference for the plaintiff, and (6) a change in demeanor on the part of the employer. *Id.*, at 279–286, citing, *inter alia, Robinson v. City of Pittsburgh, supra., Krouse v. American Sterlizer Company*, 126 F.3d 494, 500 (3rd Cir.1997), *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3rd Cir.1997) and *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3rd Cir.1989); *Lidwell v. University Park*, 116

F.Supp.2d at 582–583; *Harris v. Smithkline Beecham*, 27 F.Supp.2d at 580.

In this case, the plaintiff argues that she has established the requisite "causal connection" because, from the time of her refusal to engage in a "relationship" with Reid, he systematically undermined her access to and working relationship with her internal "customers" (i.e., the various departments and department heads for whom she performed Human Resources services). As a result, Plaintiff further asserts, her value to these customers was devalued thereby allowing the defendants to claim that the customers no longer wanted her to work for them. While there is no evidence that Reid in fact undermined her access to and working relationship with her internal customers other than Plaintiff's own testimony, Richard Luzzi testified that he had received a number of complaints from Fred Smith and Jim Nolan about Plaintiff's inability to complete several projects and, at his direction, Plaintiff was removed as the leader on the performance management project and the Coatesville partnership agreement project in 1997. Prior to this time, there is no evidence that anyone at the company was dissatisfied with Plaintiff's job performance and in fact, she had consistently received high marks at her annual evaluations. Therefore, giving Plaintiff the benefit of every possible doubt, as we must on a motion for summary judgment, we shall therefore find that this scant evidence is sufficient to show that a causal link may exist between Ms. Mroczek's sexual harassment complaint and Lukens' adverse employment actions.

Once a plaintiff has made out a prima facie case of retaliation, the burden shifts to the defendants to produce rebuttal evidence showing legitimate, non-discriminatory reasons for the actions taken. Here, the evidence shows and as plaintiff herself admitted, she greatly resented the defendant company's decision to promote Mark Reid to the position of the Corporate Hu-

man Relations Manager. Again, by Ms. Mroczek's own testimony she believed that the self-directed team was functioning well, she liked working directly for Richard Luzzi and she saw no need for Mark Reid or anyone else to assume a managerial position for the human resources group at the corporate headquarters in Coatesville.

The record is also replete with evidence that the decision to promote Reid was due in large measure to Mr. Luzzi's having assumed greater responsibility for other functions in the company and his inability to provide the oversight which he believed the self-directed team required. There is also evidence that the self-directed team was having some difficulty in completing the various projects on which it was working to the satisfaction of the company's internal customers and that this was another reason for Luzzi's decision to promote Reid. Following Reid's promotion, the record reflects that the Human Resources unit resumed operating as it had prior to Hal King's departure in that its manager (Reid) attended most of the meetings with corporate management and functioned as the lead person on the projects and thereafter made specific work assignments to the individual employee/organization development specialists over whom he had oversight responsibilities.

There is additional evidence that for at least several months after Mr. Reid's promotion in January, 1997, Ms. Mroczek appeared sullen, disengaged and uncooperative in group meetings and with respect to group projects, including those involving the merger between Lukens and Bethlehem Steel. It further appears that the tension between Plaintiff and Reid abated somewhat thereafter and that, although plaintiff was not happy that Reid gave her an overall rating of "Good Solid Performer" at her annual review in September of that year, she did not then register any complaints as a result of her evaluation. Further evidence reflects that it was not until late March, 1998 that Mr. Luzzi made

the decision to terminate Plaintiff and that it was only as the result of the Conshohocken plant manager having banned her from the plant for allegedly revealing confidential information concerning that facility's new Human Resources Manager and the refusal of the Coatesville plant manager and senior vice president of operations to continue working with her. Accordingly, we find that the defendants have met their burden of showing that the adverse employment actions of which Plaintiff complains were made for legitimate, non-discriminatory reasons.

The burden therefore shifts back to the plaintiff to adduce evidence that the reasons articulated by the defendant as being a legitimate and non-discriminatory basis for its adverse employment action(s) are nothing more than a mere pretext for discrimination. While the court may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual, the court must determine whether the plaintiff has produced evidence sufficient for a jury to conclude that the defendant's stated reasons for the adverse employment actions were actually a pretext for retaliation. *Clarkson*, at *8, quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). *See Also: Jones v. School District of Philadelphia*, 198 F.3d 403, 413 (3rd Cir.1999). Stated otherwise, at this stage, the only question before the district court is whether the evidence establishes a reasonable inference that the employer did not discharge the employee for the reasons asserted. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3rd Cir.1990). Thus, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir.1994) citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) and *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3rd Cir.1992).

It is at this point that Plaintiff's case fails. By her own admission, she has no information and cannot say that Mr. Reid played any part in the decision of the Conshohocken plant manager to ban her from working in that plant nor does she have any reason to believe that this decision related in any way to her having complained some one year earlier of sexual harassment. Likewise, Ms. Mroczek has no reason to believe that either the Vice President of Operations, or the Conshohocken and Coatesville plant managers ever knew that she had complained of sexual harassment. More than one year had elapsed from the time Plaintiff complained of harassment to her termination and there is absolutely no evidence, either direct or circumstantial, that Richard Luzzi made the decision to terminate her for any reason other than that he believed that she had lost credibility within the company such that she could no longer be effective.

There likewise is no evidence on this record that either Luzzi or Reid engaged in a campaign to discredit Plaintiff with her internal customers.[3] In sum-

mary, there is no evidence other than Plaintiff's feeling that she must have been terminated in retaliation for her having complained since none of her internal customers had ever complained directly to her, she did not learn of their dissatisfaction until she was terminated and Richard Luzzi had "done a complete about face" between their meeting on March 4, 1998 (when he agreed to speak with the Conshohocken plant manager about rescinding his ban) and March 25, 1998 (when he offered her a severance package). (*See, e.g.,* Pl's Dep., Vol. II, pp. 266–267, 294–297, 354–368). Although there is no rule of law that the testimony of a discrimination plaintiff standing alone can never make out a case of discrimination that could withstand a summary judgment motion, a plaintiff's *belief* alone that she is a victim of discrimination is not enough to meet her burden of proof. *Weldon v. Kraft*, 896 F.2d at 800; *Williams v. Greyhound Lines, Inc.,* 1998 WL 551981, *3 (E.D.Pa.1998); *Lacey v. Dana Corp.,* 1998 WL 966013, *3 (E.D.Pa.1998); *Momah v. Albert Einstein Medical Center,* 978 F.Supp. 621, 631 (E.D.Pa.1997), *aff'd w/o opinion,* 229 F.3d 1138 (3rd Cir.2000). Accordingly, we find that Ms. Mroczek has not met her burden of proving that the defendants' articulated reasons for terminating her were pretextual.

Summary judgment shall therefore be granted to the defendants pursuant to the attached order.

---

**3.** In her brief in opposition to Defendant's motion, Plaintiff argues that her case should survive summary judgment because of the inconsistencies in the reasons which defendants gave for Plaintiff's discharge in their position statement to the EEOC and in this action, and because Mr. Luzzi's deposition testimony that he was never informed of plaintiff's claim of sexual harassment is incredible. While the position statement does differ somewhat from the defendants' answer in that it suggests that plaintiff was terminated not for disclosing confidential information following the Conshohocken annual meeting but for repeatedly calling in sick to work, there is record evidence that plaintiff may have indeed disclosed confidential informa-

tion *and* that she was absent from work for an extended period of time between early March and mid April, 1998 due to stress. We thus do not find an inconsistency between the position Defendants took at the administrative level and that which they are taking here.

Similarly, while Mr. Luzzi testified that he didn't recall discussing Plaintiff's claim that she was sexually harassed by Mr. Reid with either Plaintiff or the company EEO officer, he did recall having discussions with Plaintiff about her working relationship with Reid. Given that Plaintiff herself testified that she never used the words "sexual harassment" in her meeting with Luzzi, we find no inconsistency on this point either. (Pl's Dep. Vol. III, at p. 620; Luzzi Dep. at pp. 13–14).

## ORDER

AND NOW, —— this day of January, 2001, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and Judgment is entered in favor of the defendants as a matter of law for the reasons set forth in the preceding Memorandum Opinion.